## 13692.  BIDDY *et al. v.* PEOPLE'S BANK.

1. While, under the Civil Code (1910), §§ 3543 and 3544, a surety will be discharged by a novation changing the nature or terms of his contract without his consent, and therefore the acceptance by a payee bank, without the agreement or consent of the surety, of a new note in renewal or payment of the original note signed by the surety will discharge him from liability, such an acceptance by the payee bank, when induced by the actual fraud of the maker in presenting the renewal instrument with the signature of the surety forged thereon, and without knowledge or reasonable ground to suspect, on the part of the bank, that the signature was in fact a forgery, will not release the surety, where it appears that upon discovery of the fraud of the maker the bank promptly disaffirmed its previous acceptance of the renewal note, by regaining possession of the original note and suing thereon. Ritter *v.* Singmaster, 73 Pa. 400; Goodrich *v.* Tracey, 43 Vt. 314 (5 Am. R. 281); Allen *v.* Sharpe, 37 Ind. 67 (10 Am. R. 80, 85); McDougal *v.* Walling, 15 Wash. 78 (45 Pac. 668, 55 Am. St. R. 871, 874); Stratton *v.* McMakin, 84 Ky. 641 (4 Am. St. R. 215-217); Corydon Deposit Bank *v.* McClure, 140 Ky. 149 (130 S. W. 971, Ann. Cas. 1912B, 484); 8 C. J. 427 (note 31), 573 (§ 796). Under the facts and circumstances of the instant case, it is unnecessary to determine whether the bank owed to the sureties, whose names were forged, the duty of exercising ordinary care and diligence in discovering such forgery, or simply that it must not have been a party to the fraud or guilty of actual bad faith (but see Lyndonville National Bank *v.* Fletcher, 68 Vt. 81, 34 Atl. 38, 54 Am. St. R. 874), since the court, under instructions favorable to the defendant sureties, submitted to the jury the issue whether the payee bank did thus exercise ordinary care and diligence, and charged that the plaintiff would not be entitled to recover if its agents failed to exercise such care and diligence, and since the evidence did not demand a finding that it was thus negligent, and there is no contention that it participated in the fraud of the maker or acted otherwise than innocently in the transaction.

2. "Although the pleadings may not present the whole issue, yet if it be fully made by the evidence without objection, it is too late, after verdict, for the losing party to make that the ground of a motion for a new trial." *Parsons* v. *Wilson*, 22 *Ga. App.* 279 (95 S. E. 1009). Assuming, but not deciding, that the disaffirmance and rescission of the acceptance by the bank of the renewal instruments, under the proper and better practice, should have been set forth in the petition seeking a recovery upon the original note, or even that it was matter more appropriate to equitable jurisdiction, since the defendants permitted evidence to be introduced without objection and themselves offered evidence fully showing the facts and circumstances of the transactions, and since the evidence was sufficient to base thereon the contention that the renewal contracts were voided by the maker's fraud, the court properly submitted such contention to the jury, with appropriate instructions; and, the case having been tried upon evidence unexcepted to, supporting such theory, the defendants cannot be heard to complain upon exceptions merely to the court's charge submitting that contention, notwithstanding the pleadings

of the plaintiff bank contained no reference thereto. The defendants having by their plea and answer set up their discharge under an alleged novation, the plaintiff, not being required to file a replication thereto, was not compelled to plead matter to defeat or avoid the allegations and effect of such plea and answer, and it seems would have been entitled to show, as it did, that the alleged novation, by reason of the maker's fraud, was null and void. Such question, however, in view of the failure of the defendants to except to the admission of evidence to maintain such theory and contention, need not be determined. *Holland* v. *Heyman*, 60 *Ga.* 174 (3); *Horton* v. *Murden*, 117 *Ga.* 72 (43 S. E. 786); *Moss* v. *Chappell*, 126 *Ga.* 196 (54 S. E. 968, 11 L. R. A. (N. S.) 398); *Smith* v. *Hodges*, 8 *Ga. App.* 785 (2) (70 S. E. 195); *Bank of LaFayette* v. *Phipps*, 24 *Ga. App.* 613 (2) (101 S. E. 696); *International Harvester Co.* v. *Morgan*, 19 *Ga. App.* 716 (92 S. E. 35); Civil Code (1910), §§ 5647, 5651, 5573. See also Savage *v.* Edgar, 86 N. J. Eq. 205 (98 Atl. 407, 3 A. L. R. 1021), in which it was held: "That an accord and satisfaction was induced by fraud may be shown in an action at law in which it is sought to rely upon it as a defense."

3. In view of the admission by the defendants of their execution of the note sued upon and their special affirmative plea of discharge on account of the alleged novation, the court properly charged that the burden of proof was upon the defendants to establish the facts thus pleaded. While, upon proof that the bank had accepted the new notes in lieu of the original note, and had surrendered and marked the original note "Paid," the burden of proceeding may thereupon have shifted to the plaintiff bank, it was not incumbent upon the court, in the absence of a written request, to charge the jury upon such technical and theoretical shifts of the burden. *Williams* v. *So. Ry. Co.*, 126 *Ga.* 710, 711; *Brandon* v. *Pritchett*, 133 *Ga.* 480 (2) (66 S. E. 247); *Lazenby* v. *Citizens Bank*, 20 *Ga. App.* 53, 55 (92 S. E. 391); *Byrd* v. *Byrd*, 22 *Ga. App.* 354 (96 S. E. 10); *Hickman* v. *Bell*, 10 *Ga. App.* 319 (2) (73 S. E. 596); *Temples* v. *Cen. Ry. Co.*, 19 *Ga. App.* 307 (91 S. E. 502); *Jackson* v. *Merritt Hardware Co.*, 26 *Ga. App.* 747 (3-b), 748 (107 S. E. 394).

4. The exception to the admission in evidence of the note sued upon, and the remaining exceptions to instructions of the court, are controlled by the foregoing rulings. For none of the reasons assigned was there any error by the trial judge in overruling the motion for a new trial.

DECIDED FEBRUARY 14, 1923.

Complaint; from Gordon superior court — Judge Tarver. April 25, 1922.

*J. G. B. Erwin Jr., Maddox & Doyal,* for plaintiffs in error.

*Neel & Neel,* contra.

JENKINS, P. J. The plaintiff bank, as payee, sued the maker and two accommodation indorsers or sureties upon a certain promissory note. The maker filed no defense. The sureties answered, admitting their execution of the instrument, but denying liability, and pleaded that they had been discharged,

because the bank at or about the time of maturity of the note had, without their knowledge or consent, accepted a new note signed by the maker, but not signed by themselves, with a payment of interest in advance thereon, and thereupon the bank had marked " paid " and surrendered to the maker the old note; that this transaction constituted a novation for a consideration and an extension of the time of payment, and, by increasing the risk of the sureties, operated to discharge them; and that subsequently, when this new note fell due, the payee bank accepted a similar note in renewal or payment of the maturing note, without their knowledge or consent, and thereafter, when the last renewal note fell due, accepted still another note in lieu of the latter; all of which discharged them from liability upon the original note in suit. No other pleadings were filed by the plaintiff or the defendants. On the trial the plaintiff offered in evidence the note sued upon, as signed by the maker and the two defendant sureties, with the entry across its face, " Paid." The defendant sureties objected to its introduction, upon the ground that it appeared upon its face to have been paid, and further because the bank had accepted other and different notes in payment or renewal thereof. Thereupon, without objection or exception by the defendants, the court permitted the plaintiff to show, by oral testimony from the officers of the bank, all the facts and circumstances attending its acceptance of the new notes and as to those notes themselves. It was also shown that, upon discovery of the fraud of the maker in delivering the new notes with the names of the sureties forged thereon, the bank regained possession of the note sued upon, and took steps to collect it. From the evidence thus offered and the evidence of the defendants it appears, that, while the original note sued upon bore the genuine signatures of the defendant sureties as well as of the maker, each of the subsequent notes presented by the maker to the bank, on the faith of the apparent genuineness of the signatures on which he obtained their acceptance in lieu of the original paper, bore the forged signatures of the sureties; and that neither the bank nor such sureties had any knowledge of the forgery and fraud thus perpetrated upon the bank until about the time of maturity of the last forged note, whereupon, after the sureties had called at the bank, it appeared by a comparison of their signatures that their names upon the renewal notes were forgeries. All parties concede the forgery.

With reference to the bank's opportunity to discover the forgeries, it appears that the sureties were not depositors or customers of the bank, and the bank was not familiar with their signatures; that it accepted from the maker, a brother-in-law of the sureties, both the note sued upon and the subsequent notes without question or a comparison of signatures. Upon the stand, one of the bank's officials, comparing the true and false signatures, testified with reference to the signatures of one surety, " I can see that the writing is not the same," and that the forged signature of the other " resembles the one on this (the original) note more than " the signature of the other surety did, and that " I am not familiar with their signatures, but they don't resemble; everybody don't usually sign their names exactly alike, but apparently they are not the same." Another officer or employee of the bank testified: " In my opinion they are forgeries. . . I don't think the difference in the handwriting is very apparent,— think there is some resemblance between the two. There is some little difference in the ' N ' in N. J. Biddy on the original note and the note the bank now holds; they are not exactly alike; the bank had admitted they are not the same; the writing may be a little different, but the letters are somewhat alike in the large size. They are forgeries. They deceived me at the time that I took them; I believed them to be genuine. . . I think it would take an expert to tell that these signatures were not the same. I am not an expert. I don't think that I could have told that they were not the same signatures by looking at them. I generally just look to see if the name is on the back there, as usual." A few weeks after discovery that the renewal notes contained forged signatures of the sureties, the bank, having regained possession of the original note at some time not shown by the record, took steps for its collection and brought the instant suit thereon. After hearing parol evidence with reference to the original note and its alleged novation by the acceptance of the forged notes, the court admitted the note in question. The jury found for the plaintiff. The defendants except to the admission of the note and to various instructions of the court.

It it not necessary to add anything further to the syllabus.

*Judgment affirmed. Stephens and Bell, JJ., concur.*